IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

ANTONIO C. ROBINSON
VDC #2166073                                                        PLAINTIFF

v.                          No. 2:22-cv-106-DPM

GAYLON LAY, Superintendent, East
Arkansas Regional Unit; CHRISTOPHER
JOHNSON, Deputy Warden, East
Arkansas Regional Unit; and MICHAEL
RICHARDSON, Deputy Warden, East
Arkansas Regional Unit                                              DEFENDANTS

ORDER

An administrative housing cell in the East Arkansas Regional Unit measures 85.5 square feet. It has a concrete bed with a mattress. Some space is taken up by a toilet and a desk. There is a horizontal window, a long rectangle about as wide as a person's arm.

Antonio Robinson lived in one of those cells from September 2021 to August 2022. He was there because another inmate had threatened to kill him. During those eleven months, he was offered one hour of exercise outside his cell only three or four times. Robinson could and did leave for showers a few times a week, plus the occasional trip to the barber or doctor. Otherwise, there he stayed. His cell was within earshot of mental health inmates who would scream, set fires, and intentionally flood their toilets. Robinson says his mental health

deteriorated as a result. He attempted suicide by cutting his wrists. He also says that being forced to lay in his cell with little to no movement caused back problems.

Superintendent Lay was Warden of the East Arkansas Regional Unit during that time. Johnson and Richardson were deputy wardens. Robinson has sued all three, claiming that they deprived him of his right to be free from cruel and unusual punishment. Both sides have moved for summary judgment. The Magistrate Judge recommends dismissal. Robinson filed objections, so the Court's review is *de novo*. Fed. R. Civ. P. 72(b)(3).

A few preliminary matters. Robinson's official-capacity claims are barred. *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). And his claim for injunctive relief—a transfer out of the East Arkansas Regional Unit—is moot. *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999). He has been transferred to a prison in Virginia. The Court adopts the recommendation that these claims be dismissed. The Court also adopts the recommendation that Robinson's cross motion for summary judgment be denied.

Now, the deep issue. Are Lay, Johnson, and Richardson entitled to qualified immunity on the individual capacity claims?

When Robinson was in administrative segregation, it was clearly established that prison officials violate an inmate's constitutional rights

-2-

when they are deliberately indifferent to the inmate's need to exercise outside his cell. *Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992). Like the Magistrate Judge, *Doc. 250 at 13-14*, this Court liberally reads Robinson's claim as one for denial of out-of-cell exercise, not solely outdoor exercise. To defeat qualified immunity, Robinson must show that, viewing the facts in the light most favorable to him, Lay, Johnson, and Richardson violated that right. *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016). Specifically, Robinson must show there was a substantial risk of serious harm to him, and each defendant was deliberately indifferent to that risk. *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015).

To determine whether there was a substantial risk of serious harm, the Court considers: (1) Robinson's opportunities to be out of his cell; (2) whether he could exercise within his cell; (3) the size of the cell; (4) the duration of confinement; and (5) any injuries suffered or other threats to his health. *Wishon*, 978 F.2d at 449. Lay, Johnson, and Richardson argue hard that there was no substantial risk, relying on three cases involving Arkansas inmates in this period. But these cases are distinguishable; the risk to Robinson was much more serious.

In *Barnes v. Byers*, the prisoner spent 428 days in punitive isolation. 2022 WL 1540170, at *1 (E.D. Ark. 16 May 2022). That's a few months longer than Robinson. And Barnes's cell might have been smaller than Robinson's. He had 63.54 square feet of unencumbered space.

*Barnes*, 2022 WL 1540170 at *14. Robinson had 85.5 square feet, though some of that is taken up by the toilet, desk, and bed. *Doc. 160-1 at 131*. But Barnes had many, many more opportunities to exercise out of his cell. *Compare Barnes*, 2022 WL 1540170 at *13. Most months Barnes had more than four opportunities for out-of-cell exercises. *Ibid.* Robinson had (at most) four opportunities in the entire eleven months he spent in administrative segregation. The cases are simply not comparable.

Lay, Johnson, and Richardson also cite *Taylor v. Kerstein*, 2024 WL 149548 (E.D. Ark. 12 January 2024). Taylor's cell was the same size as Robinson's. *Taylor*, 2024 WL 149548 at *2. But the similarities largely end there. The relevant period for Taylor was five months. (Taylor was in restricted housing for longer than five months but failed to exhaust his earlier claims. *Taylor*, 2024 WL 149548 at *1-2.) Robinson was in restricted housing for more than twice as long as Taylor. The longest Taylor went without out-of-cell exercise was 80 days, which Magistrate Judge Volpe found "disturbing." *Taylor*, 2024 WL 149548 at *4. Viewing the facts in the light most favorable to Robinson, he went 172 days without an opportunity to exercise outside his cell, from mid-March 2022 to the end of August 2022. And, perhaps most importantly, the threat to Robinson's health was much higher than to Taylor's. He said the lack of exercise "caused him to have headaches, stomach problems, joint pain, weight loss, and a vitamin D deficiency," but his claims were undercut by his

undisputed medical records. *Ibid.* Robinson attempted suicide multiple times.

Lay, Johnson, and Richardson's strongest case is the unpublished *per curiam* decision in *Terry v. Randle*, 2023 WL 4132800 (E.D. Ark. 22 June 2023), *aff'd*, No. 23-3153, 2024 WL 1598215 (8th Cir. 12 April 2024). The prisoner's confinement was longer: Terry said he was deprived adequate exercise from January or February 2021 to May 2022.* He was only offered out-of-cell exercise fifteen times. Still, fifteen times over fifteen months is more frequent than four times over eleven months. And the alleged harm to Terry was much less serious (vitamin deficiency and anxiety) or was unproven (muscle loss) as compared to Robinson, who tried to harm himself on several occasions.

Eleven months is a long time in a small cell. Three or four yard calls, including a 172-day period without any other opportunity for exercise outside a cell, are not frequent enough. Robinson could have exercised some in his cell, though it's disputed whether there was a risk of resulting discipline for doing so. *Compare Doc. 160-3 at 4, with Doc. 160-1 at 37-38.* And there was a clear threat to Robinson's health: he grew so depressed that he tried to kill himself. *Doc. 160-1 at 38 & 61.* All material things considered, viewing the evidence in the light most

---

* Terry said that the deprivation began with the COVID-19 lock down in 2020, but Magistrate Judge Kearney found that the right to exercise during an international pandemic was not clearly established. *Terry*, 2023 WL 4132800 at *5.

-5-

favorable to Robinson, and assuming all these facts are proven at trial, the lack of exercise outside his cell presented a substantial risk of serious harm to Robinson. *Wishon*, 978 F.2d at 448-49.

One issue remains: whether there is sufficient evidence for a jury to find that Warden Lay, Deputy Warden Johnson, and Deputy Warden Richardson deliberately disregarded the risk to Robinson. *Letterman*, 789 F.3d at 862–63. None of them deny knowing of Robinson's circumstances. Rather, they focus on logistical challenges at the prison. *Doc. 161 at 16-17.* The COVID-19 pandemic created significant staff shortages. And from April to September 2022, some yard call pens were unavailable because of construction. Lack of staff and moving inmates to other yard call pens posed security risks.

These logistical challenges are relevant. "When evaluating whether an actor deliberately disregarded a risk, we consider his actions in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862. Plus, there is some indication in the record that prison officials attempted to transfer Robinson to another unit or move him to general population. *Doc. 173 at 12-13 & 30.* But the evidence on their efforts is quite thin.

The Court can't say, as a matter of law, that Warden Lay, Deputy Warden Johnson, and Deputy Warden Richardson didn't deliberately

disregard the risk to Robinson. This case did not arise in the early days of the pandemic, but rather a year and a half after the first known case of COVID-19 in Arkansas. And a jury could well find that the fact that yard call pens were being reconstructed does not justify completely denying Robinson any out-of-cell exercise for months. It is undisputed that Robinson wasn't offered out-of-cell exercise time from 14 March 2022 through August 2022, *Doc. 160-2 at 4*, which is when the construction was underway.

A jury must decide the disputed factual issues on these points, and then the Court will revisit the immunity issue. *Lee v. Andersen*, 616 F.3d 803, 811 (8th Cir. 2010). If defendants are not immune, the jury would, after further argument, deliberate and decide the merits. The parties should consult the docket in *Tanner v. Ziegenhorn*, Case No. 4:17-cv-780-DPM (E.D. Ark.) for an example of this trial architecture. The Court therefore denies Warden Lay, Deputy Warden Johnson, and Deputy Warden Richardson qualified immunity without prejudice. Their motion for summary judgment on Robinson's individual capacity condition of confinement claims is denied.

*   *   *

The Court partly adopts and partly denies the recommendation, *Doc. 250*, and partly overrules and partly sustains Robinson's objections, *Doc. 259*. Lay, Johnson, and Richardson's motion for summary judgment, *Doc. 160*, is granted in part. Robinson's official

capacity claims, and his claim for injunctive relief, are dismissed without prejudice. But their motion for summary judgment on the individual capacity claims for money damages is denied. Robinson's cross motion for summary judgment, *Doc. 171*, is denied.

A Final Scheduling Order setting this case for trial will issue. The Court returns this case to the Magistrate Judge for further pretrial proceedings, including appointment of counsel.

So Ordered.

*/s/ DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

28 March 2025